IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ANDREW SASSER                                           PETITIONER

        V.                    Civil No. 00-4036

LARRY NORRIS, Director of
Arkansas Department of Corrections               RESPONDENT

### MEMORANDUM OPINION AND ORDER

        Currently before this Court are Petitioner's Second Supplemental and Amended Petition for Writ of *Habeas Corpus* Relief (Doc. 48), Respondent's Response (Doc. 51), Petitioner's Reply (Doc. 56), and Petitioner's Supporting Affidavit (Doc. 58). The Court finds that these matters are ripe for consideration. For the reasons stated in this Order, Petitioner's Second Supplemental and Amended Petition for Writ of *Habeas Corpus* Relief (Doc. 48) is hereby **DENIED** in its entirety.

### I.  PROCEDURAL HISTORY

        On May 4, 1994, a jury convicted Petitioner of capital murder and sentenced him to death for the homicide of Jo Ann Kennedy. Petitioner appealed his conviction to the Arkansas Supreme Court, where it was affirmed on July 17, 1995. *See Sasser v. State*, 902 S.W.2d 773 (Ark. 1995). Subsequently, Petitioner sought post-conviction relief pursuant to Arkansas Rules of Criminal Procedure 37. After conducting an evidentiary hearing, the trial court denied Petitioner's Rule 37 petition, in September 1997. On July 8, 1999,

the Arkansas Supreme Court affirmed the trial court's denial of post-conviction relief.  *See Sasser v. State*, 993 S.W.2d 901 (Ark. 1991).

On July 7, 2000, Petitioner sought a writ of *habeas corpus* in federal court.  (Doc. 3.)  Throughout several pleadings, Petitioner presented eight (8) claims upon which he requested relief.[1]  On May 23, 2002, this Court denied Petitioner's Petition for Writ of *Habeas Corpus*.  (Doc. 30).  On August 15, 2002, a Certificate of Appealability was issued for five (5) of Petitioner's claims.  (Doc. 34).

While on appeal at the United States Court of Appeals for the Eighth Circuit (Eighth Circuit Court), Petitioner moved to have the case remanded to this Court to exhaust his mental retardation.  On August 15, 2003, the Eighth Circuit Court entered a judgment, remanding the mental retardation issue to this Court, and granted the motion to file a successive petition.  (Doc. 37).  On August 27, 2003, this Court entered a Scheduling Order, stating that this Court would determine whether Petitioner is mentally retarded and whether his execution is prohibited, using the standard for mental retardation set forth in Ark. Code Ann. § 5-4-618.  (Doc. 40).  Then, on March 9, 2004, the Eighth Circuit Court entered an Amended Judgement, revising the previously entered order and remanded the case to this Court for a determination of whether the mental

---

[1]None of these claims addressed Petitioner's alleged mental retardation.

AO72A
(Rev. 8/82)

retardation claim had been exhausted.  (Doc. 44).  The Judgment provided that if this Court were to conclude that Petitioner has a viable state court remedy, the Eight Circuit Court "invited this Court to determine whether "truly exceptional circumstances" involving "a consideration going beyond the running of the statute of limitations" exist.  *Id.* (citation omitted).

On September 3, 2004, Petitioner filed a Second Supplemental and Amended Petition for Writ of *Habeas Corpus* Relief.  (Doc. 48).  Petitioner raised a mental retardation claim, alleging that Petitioner's sentence to death by lethal injection violates the Eighth and Fourteenth Amendment.  Petitioner also raised ineffective assistance of counsel claims; a claim that Petitioner's statement was taken in violation of the Fifth, Sixth, and Fourteenth Amendments; and a claim that Petitioner was incompetent during the trial and post-trial proceedings.  Additionally, Petitioner incorporated his previously adjudicated eight claims, contained in his first *habeas* petition, all of which this Court had previously denied.

After a period of inactivity, on June 14, 2006, we entered a scheduling order to ensure progression of the case.  (Doc. 65.) Completion of discovery was set for July 31, 2006 and motions regarding additional information related to mental retardation (such as motions for leave to file a supplemental and/or amended petition, supplement the record, and request for an evidentiary hearing) were to be filed by August 31, 2006.  The order stated that a failure to

3

file motions regarding additional evidence by the date provided would constitute notice to the Court that Petitioner did not intend to present additional evidence regarding his mental retardation claim. *Id.* Petitioner failed to file any motions regarding the introduction of additional information to support the mental retardation claim.

## II. FACTUAL BACKGROUND

The facts of this case have been recounted in detail at *Sasser v. Arkansas*, 902 S.W.2d 773 (Ark. 1995). To summarize, Petitioner was found guilty of killing Jo Ann Kennedy, a store clerk, by stabbing, cutting and causing blunt force head injuries during the commission or attempted commission of raping or kidnapping her.

## III. PETITION

Before addressing the merits of the petition, we must first determine what type of petition is before the Court. There is a clear distinction between supplemental and/or amended petitions and successive petitions, with the latter having more restrictive rules governing what issues may be raised. Petitioner titled the petition currently before the Court as "Petitioner's Second Supplemental and Amended Petition for Writ of *Habeas Corpus*." However, a supplemental/amended petition is filed prior to the adjudication of the original petition, whereas a petition that asserts claims that have been adjudicated on their merits in a prior *habeas* petition and/or claims that could have been asserted in a prior *habeas* petition is a successive petition. *See* 28 U.S.C. §2244(b)(3)(A);

4

*Vancleave v. Norris*, 150 F.3d 926, 928 (8th Cir. 1998) (citing *Stewart v. Martinez-Villareal*, 523 U.S. 637, 642-43 (1998) (the Court found that a claim raised in a prior petition that was dismissed as premature escapes the requirements of successive petitions); *Tyler v. Purkett*, 413 F.3d 696, 701 (8th Cir. 2005) ("Because the Rule 60(b) motion 'sought ultimately to resurrect the denial' of [petitioner's] earlier habeas petitions by asserting new claims of error in his state conviction and reasserting prior claims, however, it was properly construed as second or successive." (Citations omitted)).

In the case *sub judice*, the original petition has been adjudicated on its merits and Petitioner was in the process of appealing that decision when he raised the issue of mental retardation for the first time.  The Eighth Circuit Court granted permission for Petitioner to file a successive petition, specifically to raise a mental retardation claim.  (Doc. 37.)  What has been titled Petitioner's Second Supplemental and Amended Petition for Writ of *Habeas Corpus* is actually a successive petition in both definition and function.  Thus, for the reasons stated herein, the rules governing the type of claims permitted in a  successive petition will apply (see discussion under Section V. below).

**IV. STANDARD OF REVIEW**

A prisoner in state custody may petition a federal court for a writ of *habeas corpus* "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United

5

States." 28 U.S.C. §2254 (1996). Specifically, Section 2254(d)(1) of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides as follows:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1).

State courts should have a proper opportunity to address a petitioner's claims of constitutional error before those claims are presented to the federal court. *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991). The requirement of exhaustion of remedies is satisfied if the petitioner has "fairly presented" his claims to the state court, thus preserving those claims for federal review, by properly raising both the factual and legal bases of the claim in state court proceedings, affording that court "a fair opportunity to rule on the factual and theoretical substance of [the] claim." *Krimmel v. Hopkins*, 56 F.3d 873, 876 (8th Cir. 1995). "In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *McCall v. Benson*, 114 F.3d 754,

6

757 (8th Cir. 1997)(citations omitted).

Even when a petitioner has technically met the exhaustion requirement, the federal court may still be prevented from considering the federal *habeas* claim if it is procedurally defaulted. "A *habeas* petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 729-32. Finally, a claim may be lost due to procedural default at any level of state court review: at trial, on direct appeal, or in the course of state post-conviction proceedings. *Kilmartin v. Kemna*, 253 F.3d 1087, 1088 (8th Cir. 2001); *see also Noel v. Norris*, 194 F. Supp. 2d 893, 903 (E.D. Ark. 2002).

## V. DISCUSSION OF PETITIONER'S CLAIMS

After a court of appeals authorizes the filing of a successive petition based on a prima facie showing that the application satisfies the statutory standard, the petitioner must *actually show* that he satisfies the standard. *Tyler v. Cain*, 533 U.S. 656, 2481 n.3 (2001). The statutory requirement evidences Congress's intent that court of appeals review an application as a whole rather than examining each individual claim and that court's decision to permit the petition to go forward applies to the entire petition, not particularly specified claims. *Nevius v. McDaniel*, 104 F.3d 1120, 1121 (9th Cir. 1997). Therefore, the district court must address, claim by claim, the entire application authorized by the court of

7

appeals.  *Id.*

**A.   Claim IX: Death by Lethal Injection of a Mentally Retarded Person is Unconstitutional**

The Eighth Circuit Court has remanded to this Court the questions of whether Petitioner's mental retardation claim has been exhausted and whether the facts of his case present "truly exceptional circumstances".

1.  Exhaustion

Exhaustion is a prerequisite to a writ of *habeas corpus* except where such exhaustion would be futile.  28 U.S.C. § 2254(b) & (c); *Tatzel v. Hanlon*, 530 F.2d 1205 (5th Cir. 1976).  If there is a viable state remedy for the non-exhausted claim, the petition should be dismissed to allow the state to decide the issue.  *Carmichael v. White*, 163 F.3d 1044 (8th Cir. 1998) (finding that the district court should have dismissed petitioner's claims for failure to exhaust state remedies, as petitioner failed to show that exceptional circumstances existed to excuse the failure to exhaust).  However, a petitioner is excused from exhaustion requirements when going back to the state would be futile.  *Hawkins v. Higgins*, 898 F.2d 1365, 1367 (8th Cir. 1990) (finding that "[a]ny court challenge would be futile, and a waste of judicial resources").  In cases that present a "truly exceptional circumstance," a court may stay the petition and hold it in abeyance pending the outcome of state proceedings.  *Lee v. Norris*, 354 F.3d 846 (8th Cir. 2004).

Respondent has essentially conceded that Petitioner, at the

8

present time, has no non-futile state remedies in which to address his mental retardation claim.[2] (Doc. 51 at 11-12.) We find this position is reasonable in light of a recent state decision. *See Engram v. State*, 200 S.W.3d 367 (Ark. 2004) (where the Arkansas Supreme Court foreclosed any avenue of reopening a case in state court involving a never before raised issue of a petitioner's mental retardation baring state execution under the new constitutional law articulated in *Atkins v. Virginia*, 536 U.S. 304 (2002), stating that Arkansas has a similar rule of law that requires a defendant to raise a mental retardation claim prior to trial and the state law adequately addresses the new constitutional law). Therefore, we find the mental retardation claim has been exhausted, as no non-futile state remedies currently exist.

The question whether "truly exceptional circumstances" exist cannot be addressed as that inquiry would be necessary only if a claim has not been exhausted in state court and the court is considering holding the petition in abeyance to allow the petitioner to exhaust his claim in state court. *See Lee v. Norris*, 354 F3d 846

---

[2] Respondent stated that "[t]he respondent would contend that Sasser's claim is exhausted because he no longer has 'the *right* under the law of the State to raise, [by a belated appeal procedure], the question presented [in *habeas*,]' but rather has only a procedure by which he can *attempt to revive* that right." (Doc. 51, pg. 11 (citing 28 U.S.C. § 2254(c)) (alterations in original.)) Respondent went on to argue that regardless of the existence of a right of law, the State courts should have the opportunity to review the issue and possibly create a remedy. (Doc. 51, pg. 12.) However, the Court notes that in *Engram v. State*, the Supreme Court of Arkansas addressed this issue and declined to create a state remedy for this issue. 200 S.W.3d 367 (Ark. 2004), *cert. denied*, 125 S. Ct. 2965 (2005).

AO72A
(Rev. 8/82)

(ruling on when a "truly exceptional circumstance" exists to allow a district court hold the petitioners *habeas* petition in abeyance and dismissing the unexhausted claim without prejudice to allow petitions the opportunity to raise a claim in state court instead of dismissing entire petitions).   In light of our finding that Petitioner is excused from exhausting his *Atkins* claim--as there are no non-futile state remedies currently available to Petitioner--the question of whether or not there are "truly exceptional circumstances" is moot.

2.   Procedural Default

If a claim has been exhausted, but was not adjudicated on the merits in state court, the question of whether the claim has been procedurally defaulted must be addressed.   "A federal court conducting habeas corpus review must ordinarily refrain from reviewing any issue that a state court has already found to be defaulted on an adequate and independent state-law basis." *Murray v. Hvass*, 269 F.3d 896, 900 (8th Cir. 2001) (citing *Owsley v. Bowersox*, 234 F.3d 1055, 1058 (8th Cir. 2000)).   Where a petitioner has defaulted his federal claims pursuant to an independent and adequate state procedural rule, "federal habeas review of the claims is barred unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), or "where a constitutional violation has

10

probably resulted in the conviction of one who is actually innocent," even if the petitioner failed to show cause for the default, *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see also Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). *See Langley v. Norris*, 465 F.3d 861, 863 (8th Cir. 2006) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998) (holding that a procedurally defaulted claim can be raised in *habeas* only if the defendant can first demonstrate cause and actual prejudice for the failure to raise it on direct review, or that he is actually innocent)). The United States Supreme Court has held that the novelty of a constitutional issue at the time of state court proceeding can give rise to cause for defense counsel's failure to raise the issue in accordance with applicable state procedures, permitting entertainment of the claim in subsequent federal *habeas* proceeding. *Reed v. Ross*, 468 U.S. 1 (1984).

The United States Supreme Court has also recognized an exception for those actually innocent. To meet this exception, a petitioner must show that he is actually innocent of the crime or the punishment and that a failure to review his claim would be a miscarriage of justice, and a "court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496. The Eighth Circuit Court clarified the actual innocence exception, stating "the concept of actual innocence is used as a 'gateway,' that is, actual innocence, if it can be shown, opens the gate to consideration of constitutional claims on their merits,

AO72A
(Rev. 8/82)

claims that would otherwise be procedurally barred. . . ." *Flanders v. Graves*, 299 F.3d 974, 977 (8th Cir. 2002) (citing *Sawyer v. Whitley*, 505 U.S. 333 (1992); *Kuhlmann v. Wilson*, 477 U.S. 436 (1986)).   To establish actual innocence, a petitioner must demonstrate that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327-28 (citation omitted).

The actual innocence exception is not limited to inquiry into actual innocence of the crime, but extends to actual innocence of the punishment.   In *Sawyer v. Whitley*, the United States Supreme Court examined the issue of actual innocence of the death penalty.   505 U.S. 333 (1992).   The Court held that to show actual innocence of the death penalty, a petitioner has to "show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Id.* at 336.   The Eighth Circuit Court has applied a more lenient test, stating the actual innocence exception "will be available if the federal constitutional error alleged *probably* resulted in a verdict of death against whom the jury would otherwise have sentenced to life imprisonment." *Id.* at 345, (quoting *Stokes v. Armontrout*, 893 F.2d 152, 156 (8th Cir. 1989) (additional citation omitted)).

In the case *sub judice*, the mental retardation claim has been procedurally defaulted, as Petitioner did not properly and timely

AO72A
(Rev. 8/82)

raise the claim in his state court appeals, nor has he successfully shown that a procedural default exception applies.  The "Cause and Prejudice" exception and the "Actual Innocence" exception, as well as a showing of fundamental miscarriage of justice may have been applicable to Petitioner's mental retardation claim, except, as discussed below, Petitioner has failed to provide sufficient evidence of mental retardation.[3]  Without a sufficient showing of mental retardation, further inquiry into Petitioner's *Atkins* claim is not warranted.  *See Wiggins v. Lockhart*, 825 F.2d 1237, 1238 (8th Cir. 1987), *cert. denied*, 484 U.S. 1074 (1988), *see also* 28 U.S.C. § 2254(e)(2)(B) (a Court may not hold an evidentiary hearing on a claim arising from a new rule of constitutional law unless the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error no reasonable fact finder would have imposed the death penalty).

   3. Evidence of Mental Retardation

   Petitioner carries the burden of presenting sufficient facts to show that a writ is warranted.  *Id*.

---

[3]It is unlikely that Petitioner would have qualified for the "Cause and Prejudice" exception.  Petitioner argues that *Atkins* created a new constitutional right, therefore, cause exists for his failure to raise his *Atkins* claim in state court.  *See Reed v. Ross*, 468 U.S. 1, 16 (1984) ("where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures").  However, cause does not exist if a petitioner had tools available for him to construct the necessary legal argument during earlier proceedings.  *Frizzell v. Hopkins*, 87 F.3d 1019, 1021 (8th Cir. 1996), *see also* 28 U.S.C. § 2254(e)(2)(A)(i).  Here, Petitioner had available to him during trial and in later proceedings Ark. Code Ann. § 5-4-618(b), which prohibits the sentence of death when the defendant is mentally retarded.

AO72A
(Rev. 8/82)

The standard to prove mental retardation is set fourth as[4]:

> Significantly subaverage general intellectual functioning accompanied by significant deficits or impairments in adaptive functioning manifest in the developmental period, but no later than age eighteen (18); and
>
> Deficits in adaptive behavior.
>
> There is a rebuttable presumption of mental retardation when a defendant has an intelligence quotient of sixty-five (65) or below.

Ark. Code Ann. § 5-4-618 (Michie 2004).

Petitioner presented the Court with an affidavit (Doc. 58) to support his claim of mental retardation. Petitioner states that the affidavit "confirms Petitioners mental retardation." *Id.* However, it is imperative to recognize that the affiants do not state that Petitioner was mentally retarded, but opined that he *may* be mentally retarded. The affidavit was prepared by two licensed clinical social workers, hired by Petitioner's attorney to "provide an opinion regarding the adequacy of previous investigations specifically as they relate to identifying mental retardation and other relevant social, emotional and mental deficits in the case of [Petitioner]." The affiants discussed Petitioner's I.Q. (79), school records, and social behaviors to support their belief that Petitioner may be mentally retarded.

The evidence presented to the Court does not rise to the level

---

[4]The United States Supreme Court left the definition of mental retardation to the States. *Atkins v. Virginia*, 536 U.S. 304, 317 (2002) (quoting *Ford v. Wainwright*, 477 U.S. 399, 405, 416-17 (1986) ("we leave to the States the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences")).

14

of requiring further inquiry. *See Wiggins*, 825 F.2d at 1238 ("In order to warrant relief, or, as an initial matter, even an evidentiary hearing, a habeas corpus petitioner must allege sufficient facts to establish a constitutional claim. Mere conclusory allegations will not suffice.") Petitioner has not provided the results of an I.Q. test that would trigger a presumption that he is mentally retarded (I.Q. of 65 under Ark. Code Ann. § 5-4-618), nor did he present any medical findings that Petitioner is mentally retarded. The claim that Petitioner is mentally retarded and cannot be executed without violating the constitution, in light of *Atkins v. Virginia*, 536 U.S. 304 (2002), is not supported by sufficient facts for the Court to grant a writ of *habeas corpus* or to order an evidentiary hearing. Accordingly, we find that Petitioner's mental retardation claim is procedurally defaulted and default is not excused. The claim is hereby **DISMISSED with prejudice**.

### B.  <u>Remaining Claims</u>

The Eighth Circuit Court limited the issue on remand to "the question of whether Mr. Sasser is mentally retarded and whether pursuant to *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242 (2002) the Eighth Amendment prohibits his execution." (Doc. 37.) The Eight Circuit Court amended its judgment (Doc. 37) by remanding specific questions regarding exhaustion of the mental retardation claim. (Doc. 44.) The only proper claim before the Court is whether

15

Petitioner is mentally retarded and whether his execution is prohibited by the Eighth Amendment. However, in order to preserve judicial economy, we reviewed the remaining claims.

    1. Claims X-XII[5]

Abusive claims, one that could have been brought at the time of the original *habeas* petition, are unreviewable absent showing of either cause and prejudice or actual innocence. *Cochrell v. Purkett*, 113 F.3d 124 (8th Cir. 1997) (citing *Schlup v. Delo*, 513 U.S. 298, 318 n.34 (1995)). The facts alleged in Claims X-XII were known or should have been known to Petitioner at the time he filed his first *habeas* petition.

Because Claim X is related to the mental retardation claim remanded by the Eight Circuit Court, we will review the claim on its merits. Claim X includes a claim that Petitioner's trial defense counsel was ineffective for failing to investigate whether Petitioner was mentally retarded. *Atkins v. Virginia*, established a new constitutional rule that prohibits the execution of mentally retarded persons. 536 U.S. 302 (2002). The creation of a new constitutional rule may excuse a Petitioner from raising the newly recognized claim in a previous petition for writ of *habeas corpus*, if the issue is

---

[5]Claim X, Petitioner's Death Sentence Should be Vacated Because Counsel was Ineffective for Failing to Adequately Investigate, Develop, and Present Mitigating Evidence Including Evidence of Mental Retardation.

    Claim XI, Mr. Sasser's Statement was Taken in Violation of the Fifth, Sixth, and Fourteenth Amendments, Requiring that his Convictions and Death Sentence be Vacated.

    Claim XII, Mr. Sasser was not Competent at the Time of Trial, Direct Appeal, and Post-Conviction Proceeding Stages and Prior Counsel Provided Ineffective Assistance on These Matters. (Doc. 48.)

AO72A
(Rev. 8/82)

novel enough to warrant excusing the procedural default. *Reed v. Ross*, 468 U.S. 1 (1984); 28 U.S.C. 2244(b)(2). However, in the case *sub judice*, Petitioner had a State rule similar to the one created in *Atkins,* available to him both at trial and during his appeals. Due to the similar State rule prohibiting the execution of mentally retarded persons, whether Petitioner is mentally retarded or that his counsel failed to discover he was mentally retarded are issues that could or should have been known at the time Petitioner filed his first *habeas* petition. Furthermore, "'attorney error that results in a procedural default' is not cause unless the attorney's performance was constitutionally deficient." *Armstrong v. Iowa*, 418 F.3d 924, 927 (8th Cir. 2005) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)), *cert. denied*, 126 S. Ct. 1351 (2006). Petitioner has failed to show that he is mentally retarded, therefore, he cannot show prejudice in his attorney's failure to find and present evidence of mental retardation.[6]

The issues contained in the rest of Claim X (failure to investigate and present mitigating evidence) and Claims XI-XII

---

[6]Even if Claims X-XII were not abusive, they would not survive a review on their merits. There has not been an adequate showing that Petitioner is mentally retarded or was not competent during trial or after trial. The ineffective assistance of counsel claims would fail under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, Petitioner "must show that counsel's performance was deficient.... [and] that the deficient performance prejudiced the defense." *Id.* Objective medical and clinical data does not show that Petitioner is mentally retarded or that he was not competent during trial, thus failure to conduct further investigations into the issues was not objectively unreasonable under *Strickland*, as any possible deficiency failed to prejudice Petitioner. Since there is no finding of mental retardation, the claim that Petitioner's statement was involuntary due to mental retardation must also fail.

AO72A
(Rev. 8/82)

(whether Petitioner was competent during proceedings and whether counsel provided ineffective assistance regarding Petitioner's alleged incompetence[7]) also could or should have been known at the time Petitioner filed his first *habeas* petition.  Accordingly, the Court finds Claims X-XII impermissible as abusive claims and they are hereby **DISMISSED with prejudice.**

> 2. Claims I-VIII

Same-claim successive petitions are prohibited.  28 U.S.C.A. §2244(b)(1) (1996) ("A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.").  Any claim that had been previously adjudicated and denied on the merits in a previous federal *habeas* proceeding, shall be dismissed, without a finding, unless a "substantial injustice" will occur in the absence of a finding.  28 U.S.C. 2244(b)(1); *Reyes-Requena v. United States*, 243 F.3d 893, 899 (5th Cir. 2001); *LaFevers v. Gibson*, 238 F.3d 1263, 1256-66 (10th Cir. 2001).

Petitioner attempts to relitigate claims raised in his original petition by stating he is incorporating the claims of the prior petition,[8] and by numbering the first claim in the successive petition IX (the initial petition contained claims numbered I-VIII.

---

[7]*Id.*

[8] Petitioner states that "Claims 1 to 8 are in Mr. Sasser's original and/or amended petition for habeas corpus relief and are incorporated herein." Petitioner's Second Supplemental and Amended Petition for Writ of *Habeas Corpus* Relief, p. 6 n.1 (Doc. 48).

18

The claims contained in the original petition have been adjudicated on their merits and are thus impermissible claims in Petitioner's current successive petition.   Therefore, the claims that were adjudicated as part of the original petition, Claims I-VIII, are impermissible claims and are hereby **DISMISSED with prejudice.**

**VI.   CONCLUSION**

In light of the above findings, the Court finds that Petitioner's Second Supplemental and Amended Petition for Writ of *Habeas Corpus* should be and hereby is **DENIED** in its entirety. Judgment will be entered accordingly.

IT IS SO ORDERED this 9th day of January 2007.


/S/ Harry F. Barnes
Harry F. Barnes
United States District Judge

AO72A
(Rev. 8/82)