**THIS IS A CAPITAL CASE**

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**TEXARKANA DIVISION**

**ANDREW SASSER** **PETITIONER**

**v.** **Case No. 4:00-cv-04036-SOH**

**DEXTER PAYNE, Director,**
**Arkansas Division of Correction** **RESPONDENT**

**BRIEF IN SUPPORT OF**

**<u>MOTION TO ALTER OR AMEND JUDGMENT</u>**

LISA PETERS
FEDERAL PUBLIC DEFENDER

Alex Satanovsky, Ark. Bar No. 2025293
Eliza Meredith, N.C. Bar. No. 58788
Assistant Federal Public Defenders
1401 W. Capitol, Ste. 490
Little Rock, AR 72201
Alex_Satanovsky@fd.org
Eliza_Meredith@fd.org
(501) 324-6114

*Counsel for Andrew Sasser*

## PRELIMINARY STATEMENT

Petitioner Andrew Sasser moves under Federal Rule of Civil Procedure 59(e) to alter or amend this Court's September 24, 2026 Order denying his motion for relief from judgment under Rule 60(b). ECF No. 327 (the "Order").

Consistent with the Order, ECF No. 327 at 3–5, this motion refers to *Sasser v. Norris*, 553 F.3d 1121 (8th Cir. 2009) as "*Sasser I*", *Sasser v. Hobbs*, 735 F.3d 833 (8th Cir. 2013) as "*Sasser II*", and *Sasser v. Payne*, 999 F.3d 609 (8th Cir. 2021) as "*Sasser III*."

## LEGAL STANDARD

### A. Rule 59(e) is Proper to Challenge the Denial of Rule 60(b) Relief.

An order denying Rule 60(b) relief is subject to a motion to alter or amend under Rule 59(e). A "judgment" under the civil rules includes "any order from which an appeal lies," Fed. R. Civ. P. 54(a), and an order denying a Rule 60(b) motion is appealable. So "if a Rule 60(b) motion is made and denied, a motion under Rule 59(e) can be made attacking denial of the Rule 60(b) motion." *See* 16A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3950.4 & n.138 (5th Ed. Apr. 2026 update) (collecting cases); *cf. Williams v. Bolger*, 633 F.2d 410, 413 (5th Cir. 1980) (a timely Rule 59(e) motion off of a denied Rule 60(b) motion tolls the time to appeal); *Cano v. Baker*, 435 F.3d 1337, 1341 (11th Cir. 2006) (same).[1]

---

[1] This principle applied in *Barnett v. Roper*, 941 F. Supp. 2d 1099 (E.D. Mo. 2013), which is discussed in Sasser's prior Rule 60(b) briefs. There, the district court invoked its "broad discretion" under Rule 59(e) to reconsider its earlier denial of a

### B. The Rule 59(e) Standard

Rule 59(e) allows a district court "to rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982). A district court has broad discretion to grant a motion to alter or amend judgment. *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 629 (8th Cir. 1999) (internal quotations omitted). Because Rule 59(e) does not set forth any particular grounds for relief, a district court may appropriately grant Rule 59(e) relief after weighing relevant circumstances on a case-by-case basis. *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 174 (5th Cir. 1990).

A Rule 59(e) motion is particularly appropriate where, as here, the court rests its ruling on grounds or reasoning the parties did not put forward, and it is the movant's first opportunity to respond. *See Luig v. N. Bay Enters., Inc.*, 817 F.3d 901, 905–06 (5th Cir. 2016) (holding that district court abused its discretion by denying a Rule 59(e) motion that responded to a ground the court raised on its own). And Rule 59(e) allows a district court to reconsider a ruling for any reason it finds appropriate—even if that reason wasn't stated by the movant—and even if no Rule 59(e) motion was ever filed. *Bryant v. New Jersey Dep't of Transp.*, 998 F. Supp. 438, 442 (D.N.J. 1998) (collecting cases).

---

Rule 60(b) motion and to then revive a defaulted claim of ineffective assistance of counsel. *Id.* at 1114. That ruling led to habeas relief from a death sentence, which the Eighth Circuit affirmed. *Barnett v. Roper*, 904 F.3d 623, 628 (8th Cir. 2018) (recounting the Rule 59(e) litigation following the district court's Rule 60(b) denial).

**REASONS TO ALTER OR AMEND THE JUDGMENT**

The Order concluded that *Sasser III*'s holding survives *Rivers v. Guerrero*, 605 U.S. 443 (2025), and *BLOM Bank SAL v. Honickman*, 605 U.S. 204 (2025). ECF No. 327 at 12–15. The Court's reasoning rested on the premise that Sasser's winning claims were abusive, in the way Judge Barnes deemed them to be in 2007, well before the evidentiary hearing. ECF No. 327 at 3, 12 (citing ECF No. 71 at 15–18). The Order then reads *Sasser III* as having adopted Judge Barnes's abusiveness reasoning, instead of applying a general rationale that no new claims can be added after a habeas judgment is vacated and remanded. *Id.* at 12. And the Order is also premised on the understanding that an amended petition can be "successive" or "abusive" even if the amendment is filed before judgment. Accordingly, the Order concluded that *Rivers* and *BLOM Bank* did not undermine *Sasser III*, reasoning that the functional amendment of new claims was abusive, and thus successive, even though there was no final judgment against Sasser. *Id.* at 14.

The Order makes two principal mistakes the Court should correct. First, the Order misinterprets habeas doctrine as authorizing a court to find prejudgment amendments to be successive and/or abusive. That is erroneous, and *Rivers* so confirms. The successor bar (and the pre-AEDPA abuse doctrine) are categorically and definitionally inapplicable to prejudgment amendments. Second, the Order misreads *Sasser III*. The Order treats *Sasser III* as resting on the 2007 abusiveness ruling, when in fact it rested on a categorical rule: after a judgment is vacated, amending new claims (or presenting new evidence at a hearing, which functions as

adding a new claim) is successive. That rule is not tenable after *Rivers* and *BLOM Bank*. Each mistake is independently sufficient to undo the Order's reasoning.

## I. Habeas Amendments Filed Before Judgment Cannot be "Second or Successive" or "Abusive."

The Order's denial of relief rests on the premise that prejudgment amendments may be barred as "second or successive" under § 2244(b) if a court deems them abusive. The Order does not dispute that "the liberal amendment standard for pleadings generally applies once a judgment is vacated." ECF No. 327 at 14 (citing *BLOM Bank*, 605 U.S. at 213–14). It holds instead that this "does not necessarily preclude a determination that new claims presented prior to a final judgment are abusive and thus barred from consideration under 28 U.S.C. § 2244(b)(3)." *Id.* (citing *Banister v. Davis*, 590 U.S. 504, 512 (2020)). The Order says Sasser's argument fails for that reason. *See id.* (explaining that Sasser's reliance on *BLOM Bank* "rests on the Court accepting an argument that it rejected above").

The Order explains this premise by reasoning (1) that *Rivers* left the question open, *id.* at 13 & n.13, and (2) that *Banister*'s remark that "[c]hronology here is by no means all" was the Court's way of saying that amendments chronologically before judgment might also be successive, *id.* at 13. Respectfully, the premise is mistaken. *Banister* and *Rivers* both state unequivocally that prejudgment amendments are not successive. Both also explain why: no judgment yet exists. Section 2244(b), as confirmed in *Rivers* and *Banister*, does not bar amendments prior to the judgment on the first application. And neither did the pre-AEDPA abuse-of-the-writ doctrine. While prejudgment amendments may be denied, any

such denial would be pursuant to ordinary application of Federal Rule of Civil Procedure 15(a) standards.

### A. *Banister* and *Rivers* squarely recognize that prejudgment amendments are not successive, because no judgment has issued.

*Banister* begins from the settled understanding that a "second or successive application" is a term of art that does not reach every filing made "second or successively in time." 590 U.S. at 511 (quotation marks omitted). *Banister* recognizes that "the courts of appeals agree (as do both parties) that an amended petition, filed after the initial one but before judgment, is not second or successive." *Id.* at 512 (citing 2 R. Hertz & J. Liebman, *Federal Habeas Corpus Practice and Procedure* § 28.1, pp. 1656–57, n.4 (7th ed. 2017) (collecting cases)). The point is uncontroversial and unremarkable, as habeas treatises acknowledge. *See, e.g.*, Brian R. Means, *Federal Habeas Manual* § 11:41 (May 2026 update) ("It is important to recognize that a motion to amend a habeas petition that is still pending in the district court is not a second or successive petition.") (emphasis in original); Brian R. Means, *Postconviction Remedies* § 27:11 (June 2026 update) ("Second or successive defined—Conclusion of 'first' proceeding required.")

In *Rivers*, the Court reaffirmed this line. The Court ruled that a filing after judgment is "generally" successive, even while an appeal is pending, explaining that "whether a filing qualifies as a second or successive application generally turns on the existence of a final judgment with respect to the first petition, not the status of an appeal." 605 U.S. at 453. It then explained the legal significance of a pleading on

each side of the "judgment" line. As to prejudgment amendments, the Court said: "'[A]n amended petition, filed after the initial one but before judgment, is not second or successive' for § 2244(b) purposes precisely because final judgment has not issued." *Id.* (quoting *Banister*, 590 U.S. at 512). But on the post-judgment side, some habeas pleadings and their functional equivalents are generally, but not always, successive. *See id.* (using example of a Rule 60(b) motion that functions as a *de facto* petition as successive because it is "filed, obviously, after the judgment has issued") (citing *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005)). *See also Banister*, 590 U.S. at 511–12 & n.3 (citing *Panetti v. Quarterman*, 551 U.S. 930, 943–44 (2007) (execution-competency claim), *Magwood v. Patterson*, 561 U.S. 320, 332 (2010) (technically new judgment), and collecting other examples of "second-in-time, post-judgment application[s]" that are not successive within the meaning of that term of art).[2]

The Order denying relief is premised on the notion that prejudgment amendments can be subject to the successor bar. The Order then reasons that nothing in *Rivers* disclaims this understanding:

> *Rivers* does not put forth a rule—either explicitly or implicitly—which holds that second-in-time habeas filings prior to a final judgment can never be considered successive. Indeed, *Rivers* explicitly declined to address an argument that mirrors the position that Sasser takes: that any attempts to amend an initial habeas petition "do not—by their

[2] For this reason, the Order misreads the role of the word "generally" in *Rivers*, and the *Banister* observation that "[c]hronology here is by no means all." *See* ECF No. 327 at 13. Each qualifier refers only to the fact that some *post-judgment* filings are not necessarily successive. *See Rivers*, 605 U.S. at 454; *Banister*, 590 U.S. at 512 & n.3 (collecting examples). But neither qualifier suggests that a prejudgment amendment can ever be successive.

> nature—qualify as second or successive filings under § 2244(b)." *Id*. at 457–58.

ECF No. 327 at 13; *see id*. at 13 n.13 ("As noted above, the Supreme Court explicitly declined to decide if attempted amendments to an initial petition are categorically not successive petitions.") (quoting *Rivers*, 605 U.S. at 457). As noted earlier, that is an incorrect reading of Supreme Court precedent. *See Rivers*, 605 U.S. at 453 (recognizing that "'an amended petition, filed after the initial one but before judgment, is not second or successive'") (quoting *Banister*, 590 U.S. at 512).

The question *Rivers* reserved is whether to recognize another exemption where a *post-judgment* filing is not successive. The petitioner in *Rivers* had argued that a *post-judgment* Rule 15 motion is not successive, because all Rule 15(a) motions "do not—by their nature—qualify as second or successive filings," and thus they escape § 2244(b) even when a judgment on the first petition has been entered and was pending appeal. 605 U.S. at 457. The Court explained that Rivers's theory "does not operate on the timing of the filing" (*i.e,* whether it is before or after judgment), because a Rule 15 motion never "counts as an 'application' at all." *Id.* at 457–58. The fact that Rivers had a judgment against him was the premise of the proposed workaround, which the Court declined. *Id.* at 457–59. Here, by contrast, Sasser's argument is premised on the fact that in 2013 he was already back in a prejudgment posture, with the 2002 judgment vacated and rendered null. The

question about prejudgment amendments is the question *Rivers* answered, *see id.* at 453 (quoting *Banister*), not the one it reserved.[3]

At a minimum, *Rivers* (and *BLOM Bank*) supply a "jurisprudential characterization" or a "'remarkable—if limited' development in relevant settled law" regarding the primacy of a final judgment in place to support Rule 60(b)(6) relief. *See Bynoe v. Baca*, 966 F.3d 972, 983–84 (9th Cir. 2020); *see id.* at 986 (an new decision "[need] not *mandate* a different outcome"; it was sufficient that the decision "undermined the central premise" of the prior ruling) (emphasis in original).

**B. The abuse-of-the-writ doctrine likewise never reached amendments made before judgment.**

The Order also reasoned that a prejudgment "later-in-time filing which constitutes 'an abuse of the writ' is successive for the purpose of 28 U.S.C. § 2244(b)." ECF No. 327 at 13 (examining *Rivers,* 605 U.S. at 457–58, and quoting *Banister*, 590 U.S. at 512); *see id.* at 9 (noting that a prejudgment amendment can sometimes be an "abuse of the writ" and, if so, successive) (quoting *Banister*, 590 U.S. at 512). It then concluded that although "the liberal amendment standard for pleadings generally applies once a judgment is vacated, *see BLOM Bank*, 605 U.S. at 213–14, this does not necessarily preclude a determination that new claims presented prior to a final judgment are abusive and thus barred from consideration

[3] *See also* Br. of Amicus Curiae U.S. Sen. John Cornyn in Support of Respondent at 15, *Rivers v. Guerrero*, No. 23-1345 (U.S. Feb. 27, 2025) ("[A] plaintiff may be granted leave to amend . . . [if] there is a timely appeal and the judgment is set aside on appeal.") (quoting 3 Moore's Federal Practice, § 15.13[2] at 15–22 (3d. ed. 2024)).

under 28 U.S.C. § 2244(b)(3)." *Id.* at 14 (citing *Banister*, 590 U.S. at 512). That reasoning rests on the mistake of law that adding claims before judgment can be an abuse of the writ. It cannot. As explained below, the abuse doctrine is categorically inapplicable when a habeas case is still in prejudgment posture.

Even before AEDPA rewrote § 2244(b), the abuse-of-the-writ doctrine applied only after a first habeas proceeding had gone to judgment. In *Wong Doo v. United States*, one of the Court's seminal habeas cases, the Court defined the abuse in reference to an adverse judgment in a first petition: "To reserve the proof for use in attempting to support a later petition, *if the first failed*, was to make an abusive use of the writ of habeas corpus." 265 U.S. 239, 241 (1924) (emphasis added); *see McCleskey v. Zant*, 499 U.S. 467, 481 (1991) (examining *Wong Doo*); *id.* at 477–89 (tracing the abuse-of-the-writ doctrine's history). As *McCleskey* explains, the doctrine developed as an equitable substitute for *res judicata*, which did not attach to the denial of habeas relief. *Id.* at 479–82. The Court "rejected *res judicata* in a strict sense as a basis for dismissing a later habeas action," but it "made clear that the *prior adjudication* bore vital relevance to the exercise of the court's discretion in determining whether to consider the petition." *Id.* at 482 (emphasis added).

When Congress incorporated the abuse doctrine into § 2244(b) in 1966, it made a prior denial on the merits the statute's trigger. The provision applied only to "a subsequent application" that is filed "after . . . a person in custody . . . ha[d] been denied . . . an application for a writ of habeas corpus," 28 U.S.C. § 2244(b) (1994), Act of Nov. 2, 1966, Pub. L. No. 89-711, § 1, 80 Stat. 1104; *see McCleskey*, 499 U.S.

at 485–87 (examining the former amendments). Where pre-AEDPA courts did disagree, the disagreement concerned only filings made after the district court entered judgment. Surveying that history, *Rivers* found "no clear or consistent practice" for new filings after the district court's judgment but during the appeal, versus new filings submitted after the judgment was affirmed. *Rivers* thus drew the line at a final district court judgment under the current § 2244(b), because the "historical picture" was "far too murky to be dispositive." 605 U.S. at 456. But again, there was, by the doctrine's own terms, no such thing as an abusive pre-judgment amendment.[4]

In this case, Judge Barnes dismissed the three new, non-*Atkins* claims in Sasser's 2004 amended petition as abusive, noting that their facts "were known or should have been known to Petitioner at the time he filed his first habeas petition." ECF No. 71 at 16; *see id.* at 16–18. But that finding was defensible only because a final judgment had then been entered in 2002 and had not (yet) been set aside. *Cf. BLOM Bank*, 605 U.S. at 213 (quoting *Boyd v. Sec'y, Dep't of Corr.*, 114 F.4th 1232, 1237 (11th Cir. 2024))). The order cites *Cochrell v. Purkett*, 113 F.3d 124 (8th Cir. 1997), *see* ECF No. 71 at 16, an ordinary black-letter abuse of the writ case. And the defining terms of the abuse doctrine were, as *Cochrell* recounts, that "*[a]fter a state prisoner's first federal habeas petition has been decided*, federal courts generally

[4] The State of Arkansas in *Rivers* likewise recognized that "[f]or pre-AEDPA courts, the line dividing a first petition from successive petitions was (allowing for Rule 59(e) motions) simply the entry of final judgment." Br. of Arkansas et al. as Amici Curiae Supporting Respondent at 2, *Rivers v. Guerrero*, No. 23-1345 (U.S. Feb. 27, 2025).

cannot consider the merits of claims raised in the prisoner's later federal habeas petitions." *Cochrell*, 113 F.3d at 126. (emphasis added).[5]

## II. The Order Denying Rule 60(b) Relief Misreads *Sasser III*, Whose Rationale Does Not Turn on the 2007 Abusiveness Finding

The Order does not read *Sasser III* as a case resting on a general presumption that amendments are successive if sought after a vacatur and remand. Rather, the Order reads *Sasser III* as governed by the particular history of Sasser's case—by his premature 2004 attempt to add new claims while the case was in the Eighth Circuit mid-appeal. The Order reads *Sasser III* for the proposition that the claims Sasser prevailed on in 2018 "were first presented in the Second Amended Petition and found to be abusive by [the district court] because they should have been known to Sasser when he initiated this habeas action years earlier." ECF No. 327 at 12 (citing *Sasser III*, 999 F.3d at 613–15 and ECF No. 71 at 18). The Order then reads *Sasser III* as having "clearly agreed with that earlier assessment [in Judge Barnes's 2007 ruling] because it held that the 'new ineffective-assistance claims' . . . were ultimately 'barred as a second or successive petition *and an abuse of the writ*.'" *Id.* at 12 (quoting *Sasser III*, 999 F.3d at 616 (emphasis in Order).) In short, the Order insists that the Eighth Circuit's prohibiting of material alterations to a claim after remand was "not the rationale expressed in *Sasser III*." ECF No. 327 at 12 & n.11 (noting that such a rationale is an "erroneous characterization").

---

[5] Put differently, if Judge Barnes had not yet entered the 2002 judgment, ECF No. 30, and the case was still pending when Sasser moved to file his 2004 second Amended Petition, any new claim would be fair game under Rule 15(a), and the amendment could not, as a categorical matter, be deemed abusive or successive.

Respectfully, the Order misreads the *Sasser III* rationale. *Sasser III* compared the ineffective-assistance evidence from the post-remand hearing against the barebones ineffective-assistance claim pleaded in the operative 2001 Amended Petition. *Sasser III*, 999 F.3d at 614. From that comparison, *Sasser III* observed—correctly to be sure—that the hearing evidence amounted to ineffectiveness claims that were "not the claims that were pleaded in the [2001] amended petition." *Id.* at 615. And in the next sentence, *Sasser III* adds its legal conclusion: "Sasser's effort to bring new ineffective-assistance claims on remand constituted an unauthorized second or successive habeas petition that should have been dismissed." *Id.* *Sasser III* goes on to recount how these new claims also happened to trace the claims Sasser tried to amend in 2004, prior to the 2013 reversal in *Sasser II*. Certainly, under the *Sasser III* reasoning, the 2004 ineffectiveness claims impermissibly exceed the 2001 ineffectiveness ground. But that is so because *Sasser III* reasoned that *any new claim* that exceeds the scope of the pleaded 2001 claims is necessarily successive. *Sasser III* later repeats that straightforward rationale: "[t]he evidentiary hearing on remand was not a proper forum for Sasser to develop new federal claims that were not raised in his first habeas petition." *Id.* at 616. And given that framework, *Sasser III* concluded that Sasser could not pursue any claims "improperly raised in the second amended petition in 2004 . . . *or developed* in an evidentiary hearing after the remand in 2014." *Id.* (emphasis added). Thus, what triggered the successor bar in *Sasser III* was the *substantive* finding that Sasser's hearing evidence painted a picture of novel claims that were distinct from the 2001

ineffectiveness ground, not the *procedural* finding that Sasser had once prematurely tried to file an amended petition with those facts.

The *Sasser III* panel's recounting of Sasser's 2004–2009 premature attempt to amend the 2001 barebones ineffectiveness claim was not the basis for the panel's conclusion. While the panel recounted that Sasser got rebuffed in 2007 from such an amendment as abusive, *see* ECF No. 71, it also recounted that the 2009 panel in *Sasser I* agreed the amendment was not possible in light of a narrow mandate.[6] *Sasser III* observed—correctly enough—that Sasser was effectively "reviv[ing]" the ineffectiveness theories he had pleaded in the 2004 amendment. *Id*. at 615. But the *Sasser III* reasoning would hold even if Sasser never sought to amend in 2004. The claims Sasser developed at the 2016 hearing would still be different from "the claims that were pleaded [in 2001]." *Id.* at 615. They would still be deemed "new ineffective-assistance claims." *Id.* And they would still be "barred as a second or successive petition." *Id*. at 616.

---

[6] The *Sasser I* panel did not adopt Judge Barnes's abusiveness rationale, ECF No. 71 at 16. The *Sasser I* panel only held that the amendment was not proper under the mandate rule, because the case was still in the Eighth Circuit on a pending appeal, except for an *Atkins* challenge. *See Sasser I*, 553 F.3d at 1127. If a ground for a district court's ruling is not affirmed on appeal, it does not have preclusive effect going forward. *See Fairbrook Leasing, Inc. v. Mesaba Aviation, Inc*., 519 F.3d 421, 425 (8th Cir. 2008); *id.* at 428 (adopting Restatement (Second) of Judgments § 27 cmt. o (1982)).

Whatever its correctness then, the 2007 abusiveness ruling was valid only to the extent that Sasser sought the 2004 amendment while a final judgment was in place, pending appeal. The premise of the current Rule 60(b) motion is that, after *Rivers* and *BLOM Bank*, the existence of a final judgment is the controlling matter, prejudgment amendments are not successive, and the vacatur of a judgment is the equivalent of no judgment having been entered.

## CONCLUSION

For these reasons, the Court should alter or amend its Order, ECF No. 327, grant Sasser's motion for relief from judgment, ECF No. 314, and reinstate its 2018 order and writ of habeas corpus vacating Mr. Sasser's death sentence, ECF Nos. 284–85.

Dated: October 22, 2026

Respectfully Submitted,

LISA PETERS
FEDERAL PUBLIC DEFENDER

/s/Alex Satanovsky
Alex Satanovsky, Ark. Bar No. 2025293
Eliza Meredith, N.C. Bar. No. 58788
Assistant Federal Public Defenders
1401 W. Capitol, Ste. 490
Little Rock, AR 72201
Alex_Satanovsky@fd.org
Eliza_Meredith@fd.org
(501) 324-6114

*Counsel for Andrew Sasser*